**Below is a Memorandum Decision of the Court.**

*Mary Jo Heston*
_____
**Mary Jo Heston**
**U.S. Bankruptcy Judge**
(Dated as of Entered on Docket date above)

---

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF WASHINGTON AT TACOMA**

| | |
|---|---|
| In re:<br><br>SOUTHBANK DAIRIES, LLC and<br>JERRY D FOSTER,<br><br>                   Debtors. | Bankruptcy Case No.'s<br><br>17-41467 LEAD CASE<br><br>17-41468 Jointly Administered Under 17-41467<br><br>**MEMORANDUM DECISION ON APPLICATION FOR COMPENSATION OF FARM MANAGER** |

      This matter came before the Court on April 5, 2018, on the Application for Compensation of Farm Manager ("Application") filed by the Chapter 12 Trustee ("Trustee"). After the hearing, the Court gave the Farm Manager, Shelly Crocker, the opportunity to file a supplemental declaration in support of her Application. Ms. Crocker timely filed a supplemental declaration ("Supplemental Declaration"). Victor Santacruz, Luis Santacruz, Cirilo Mancinas Lopez, Raymundo Martinez, Lucia Garcia and William Alcantar (collectively "Employee-Creditors"), also filed a supplemental response in support of the Application. Based on the pleadings filed and arguments presented, the Court makes the following findings of fact and conclusions of law.

# BACKGROUND

On April 13, 2017, Southbank Dairies, LLC and Jerry Foster both filed voluntary Chapter 12 petitions. Jerry Foster was the manager and sole member of Southbank Dairies, LLC. Southbank Dairies, LLC and Jerry Foster are collectively referred to herein as "Debtors." The Debtors were removed as debtors in possession on November 8, 2017, and an order was entered authorizing the Trustee to operate the Debtors' farming operations and perform all duties of a debtor in possession. See ECF No. 137.

On November 14, 2017, the Trustee filed an ex parte application to appoint Ms. Crocker as Farm Manager. A conditional objection to the application was filed by creditors Hank Doelman and James Road Dairy, LLC. Doelman, the Trustee, and the Employee-Creditors entered into a stipulation ("Stipulation"), which provided that Ms. Crocker was to be engaged in accordance with her engagement letter ("Engagement Letter") and that Ms. Crocker's fees were capped at $75,000, without prejudice to a motion to increase her fee cap after notice and a hearing. Stipulation 2:6-7, ECF No. 175. The Court thereafter entered an Order Authorizing Trustee to Employ Farm Manager ("Order Authorizing Employment"). See ECF No. 175.

The Order Authorizing Employment provided that it was both "subject to approval of the Court pursuant to 11 U.S.C. § 330[1] and Local Rules W.D. Wash. Bankr. 2014-1(b)" and "without prejudice to the right of a party in interest to object to any application for compensation by the farm manager." Order Auth. Emp. 1:20-23, ECF No. 175. The Engagement Letter identified the Farm Manager's compensation at $500 per hour, except for travel time, which would be compensated at $250 per hour, along with other actual expenses and mileage at the rate of $.48 per mile. The Engagement Letter further provided that the Farm Manager would be supervising the Debtors' daily operations and acknowledged that the Trustee would also be

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Federal Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

employing a dairy consultant to assist with liquidating the livestock, caring for the animals, and supervising all necessary farm tasks. In November 2017, the Farm Manager also hired an employee, Brandon Pike, to assist her in her duties. Decl. of Brandon Pike 1:16-19, ECF No. 286; Suppl. Decl. of Shelly Crocker 3:5-14, ECF No. 339. Mr. Pike was paid as an employee of the farm.

On November 29, 2017, the Trustee filed an ex parte application to employ Steven J. Groen as dairy consultant ("Dairy Consultant"). An order approving the application was entered on November 30, 2017. See ECF No. 192. Mr. Groen's rate was identified as $125 per hour.

The other professionals employed to date in the case include Wenokur Riordan PLLC, employed as general counsel to the Trustee pursuant to an order entered December 15, 2017 (ECF No. 212); Holmes & Associates, CPAs, PS, employed as accountants to the estate pursuant to an order entered December 21, 2017 (ECF No. 241); Marc Wheeler, Attorney at Law, employed as special counsel to the Trustee pursuant to an order entered February 15, 2018 (ECF No. 283); and Hillis Clark Martin & Peterson, employed as special counsel to the Trustee pursuant to an order entered March 1, 2018 (ECF No. 293).

On December 20, 2017, the Trustee filed a motion on shortened time to increase the Farm Manager's fee cap from $75,000 to $140,000. The Employee-Creditors filed a response in support, and an order was entered granting the Trustee's motion on January 5, 2018. See ECF No. 252. Orders were also entered on January 5, 2018, consolidating the Debtors' cases and directing Joint Administration, and confirming the Chapter 12 Trustee's Plan of Liquidation ("Plan") that was adopted and joined by the Debtors. See ECF Nos. 210, 249, and 250.

The stated purpose of the confirmed Plan "is to liquidate the property of the Debtor and Jerry Foster, and to provide a method of orderly payment." Plan 3:16-18, ECF No. 208. The Plan classifies administrative creditors, including the Farm Manager, as Class 10 creditors and provides that these claims will be paid in full. The Plan further provides in Article 19 that "[t]here

shall be paid to the Chapter 12 Trustee her statutory fees in the amounts as set forth in 11 U.S.C. § 1226(a)(2)." Plan 11:26-27, ECF No. 208.

On March 7, 2018, the Trustee filed an application for compensation of Farm Manager and an application for compensation of Dairy Consultant. The Dairy Consultant sought approval of $37,943.75 in fees and $2,747.76 in costs, for total compensation of $40,691.51. The Court reviewed the application and entered an order approving the Dairy Consultant's application on April 6, 2018.

Ms. Crocker seeks approval of $126,500.00 in fees and $2,106.37 in costs, for total compensation of $128,606.37. The Application indicates that it includes 4.6 hours of "no charge" time and 4 hours of estimated time to complete the case.

**ANALYSIS**

In accordance with § 330, an applicant is entitled to reasonable compensation for actual, necessary services. The burden is on the applicant to demonstrate that the fees are reasonable. In re Basham, 208 B.R. 926, 932 (9th Cir. BAP 1997), aff'd, 152 F.3d 924 (9th Cir. 1998). Section 330(a)(3) outlines several factors a court is to consider in determining whether fees are reasonable, and a bankruptcy court has "wide discretion in determining the reasonableness of fees." In re Placide, 459 B.R. 64, 73 (9th Cir. BAP 2011). Section 330(a)(4) sets forth those services for which compensation should not be allowed, including for unnecessary duplication of services and for services that were not reasonably likely to benefit the debtor's estate.

The Court recognizes that this has been a difficult and complex case, made even more difficult by the actions of the Debtors and related insiders. The Court is also sensitive to the fact that no objections to the Application have been filed and that the Employee-Creditors have filed a response in support of Ms. Crocker's Application. However, despite a lack of objections, the bankruptcy court still has an independent duty to examine and approve professional fees

MEMORANDUM DECISION ON APPLICATION FOR
COMPENSATION OF FARM MANAGER - 4
 Case 17-41467-MJH    Doc 342    Filed 04/24/18    Ent. 04/24/18 14:06:00    Pg. 4 of 13

and expenses.  See, e.g., In re Dorsett, 297 B.R. 620, 624 (Bankr. E.D. Cal. 2003); In re Channel Master Holdings, Inc., 309 B.R. 855, 861 (Bankr. D. Del. 2004).

As stated by the Court at the April 5, 2018 hearing, the Court's primary concern with the Application is whether Ms. Crocker should be compensated from the estate as an administrative claimant for services related to the liquidation of the Debtors' assets.  The issue is whether Ms. Crocker is seeking compensation for performing duties that were not within the scope of her employment and that should have been performed by either the Trustee for her percentage fee or by other hired professionals, including Mr. Groen, at a significantly lower hourly rate.

The duties of a Chapter 12 trustee are set forth in § 1202.  The duties of a Chapter 12 trustee are increased substantially if the debtor is a removed as a debtor in possession.  See § 1202(b)(5).  In this case, the Debtors were removed as debtors in possession on November 8, 2017.  The Trustee and the removed debtors in possession then jointly confirmed a plan providing for liquidating of the Debtors' assets.  Because the Debtors were removed as debtors in possession, the Trustee assumed all their rights and powers and corresponding duties, including the duty to liquidate the Debtors' assets pursuant to the Plan.  See § 1202(b)(5) and § 1203.  This includes ensuring that the terms of the confirmed Plan are complied with and payments commence.  See § 1202(b)(4).

A trustee may not delegate the trustee's statutory duties.  "Trustee duties are just that, the duties entrusted only to the Trustee," and "those duties charged to the Trustee cannot be compensable to anyone else, even properly employed professionals of the estate."  In re Peterson, 566 B.R. 179, 190 (Bankr. M.D. Tenn. 2017).  The primary reason such duties may not be delegated is because of the statutory trustee compensation scheme, which limits the ability of the Court to reduce the Trustee's compensation as set forth below.

The Trustee is a standing trustee and therefore is entitled to a fixed percentage fee in compensation.  See § 1226(a)(2).  Such compensation is also authorized by Article 19 of the

confirmed Plan. Plan 11:26-27, ECF No. 208. A Chapter 12 trustee's compensation consists of a maximum annual compensation and percentage fee calculated in accordance with 28 U.S.C. § 586(e). As recognized by the Trustee at the April 5, 2018 hearing, her compensation is fixed by the Attorney General, pursuant to this statute, and the Court is unaware of any authority that would allow it to alter the percentage fee. See, e.g., In re Pianowski, 92 B.R. 225, 227 (Bankr. W.D. Mich. 1988) (concluding that the court has no authority to alter the percentage fee). Accordingly, a professional should not be compensated from estate assets for performing trustee duties because the trustee already receives a set statutory fee for such services. The Court examines administrative fee requests even more carefully in a case such as this where it appears that the Trustee will receive a significant percentage fee,[2] administrative claims are still being incurred, and it appears unlikely that all allowed claims will be paid in full.

Differentiating between necessary professional services and typical trustee duties is not a simple task. See In re Perkins, 244 B.R. 835, 838 (Bankr. D. Mont. 2000). Courts have struggled to create a bright-line rule, typically starting with the statutory duties imposed on a trustee by the Bankruptcy Code and then evaluating these duties in light of the code sections applicable to compensation, including § 326, § 328 and § 330.

Although a trustee may not delegate statutory duties, it is also well accepted that a bankruptcy trustee often requires assistance in carrying out his or her responsibilities. This may be because the tasks are too complex or time consuming for one individual to perform or because special expertise is necessary. Recognizing the benefits to the estate and creditors, the Bankruptcy Code specifically authorizes trustees to employ professionals to assist them in carrying out their duties. See § 327.

---

[2] The Trustee at the hearing estimated that her fee would be $140,000. Based on the current compensation level of the Trustee and the estimated value of the assets, it appears that the Trustee's fee could in fact be greater than this amount.

MEMORANDUM DECISION ON APPLICATION FOR
COMPENSATION OF FARM MANAGER - 6
Case 17-41467-MJH    Doc 342    Filed 04/24/18    Ent. 04/24/18 14:06:00    Pg. 6 of 13

When the Trustee sought to employ Ms. Crocker as Farm Manager, both the Court and creditors Hank Doelman and James Road Dairy, LLC raised various concerns. Such concerns included the possible duplication of services with the Trustee's duties or those of other professionals, and whether her proposed rate of $500 per hour was appropriate under the circumstances.[3] The Court made its concerns known to the Trustee and Ms. Crocker at the hearing on the application to employ. Subsequent to the hearing, the parties submitted a stipulated order agreeing to Ms. Crocker's employment as Farm Manager with a maximum cap on her fees. Rather than entering the parties' proposed order, the Court prepared its own order approving Ms. Crocker's employment as Farm Manager, which stated that any compensation sought would be subject to Court approval despite the stipulated cap. Order Authorizing Employment 1:20-24, ECF No. 175.

In the application to employ, the Trustee indicated that Ms. Crocker's employment was necessary "to assist with the operating of the Debtor's farming business." Ex Parte Application 1:25-27, ECF No. 159. The Stipulation, attached to the Order Authorizing Employment, authorized the Trustee to hire Shelly Crocker as Farm Manager in accordance with her engagement letter attached as Exhibit A. Stipulation 2:2-3, ECF No. 175.

The Engagement Letter contains a paragraph captioned "Scope of Representation." This paragraph provides:

> This letter is to confirm that you have retained Shelly Crocker LLC as the farm manager for the Southbank Dairies LLC and the Jerry Foster Chapter 12 estate. I will be managing and supervising the daily operations of the Chapter 12 debtors, and reporting directly to you, subject to the oversight of the United States Trustee and the Bankruptcy Court. <u>I understand you are also employing a dairy consultant</u>

---

[3] Given the exigencies of this case and the need for quickly appointing a competent and trustworthy farm manager, the Court did not pursue the issue of the Farm Manager's hourly rate further at the time of the hearing on the Farm Manager's employment and does not use a reduction in rate as a basis to reduce or disallow fees here. However, given that the $500 hourly rate, in this Court's experience, is significantly higher than typically charged by other local competent turnaround professionals, in the future the Trustee should be ready to address whether she attempted to negotiate the hourly rate, whether she considered other competent professionals who were willing to serve at a lower hourly rate and if not, why not.

MEMORANDUM DECISION ON APPLICATION FOR
COMPENSATION OF FARM MANAGER - 7
 Case 17-41467-MJH    Doc 342    Filed 04/24/18    Ent. 04/24/18 14:06:00    Pg. 7 of 13

<u>to assist with liquidating the livestock and caring for the animals</u>. In particular, the dairy consultant is providing an on site dairy operator who will supervise all the necessary farm tasks.

Order Auth. Emp Ex. A, ECF No. 175 (emphasis added).

As contemplated by the Engagement Letter and noted above, a separate professional, Mr. Groen, was subsequently hired as a Dairy Consultant, at a significantly lower rate, to assist the Trustee with liquidation of the livestock.

In her Supplemental Declaration, Ms. Crocker recognizes that her role as Farm Manager was to "oversee the farm and manage all of its operations" and to "manage the finances and make decisions on operating and employment matters." Suppl. Decl. 2:3, 3:7, ECF No. 339. She further acknowledges that Mr. Groen "was hired 'to assist with liquidating the livestock and caring for the animals.'" Suppl. Decl. 2:10-11, ECF No. 339. Liquidation services were, therefore, not within the scope of her employment. Ms. Crocker continues on to state, however, without any further explanation, "[b]y mid-December, Mr. Groen was not spending much time on the actual liquidation of the herd." Suppl. Decl. 3:15, ECF No. 339. No explanation is given for this change in Mr. Groen's duties, neither the Court nor the creditors were advised of any such change, no amendment was made to the Farm Manager's duties, and Mr. Groen's time records indicate that he continued to work through the time in question. Based on the foregoing, Mr. Groen's decreased liquidation role did not authorize Ms. Crocker to perform such services without first seeking court approval.

A professional's employment in a bankruptcy case is limited to the employment approved in the order authorizing the employment. <u>In re New England Fish Co.</u>, 33 B.R. 413, 420 n.1 (Bankr. W.D. Wash. 1983). This requirement promotes proper management of the case and oversight of professionals. <u>New England Fish</u>, 33 B.R. at 418. "The scope of employment may not be expanded by simple agreement between the professional and the trustee. It must be approved by the court. Both parties are responsible for assuring that the scope is not exceeded."

MEMORANDUM DECISION ON APPLICATION FOR
COMPENSATION OF FARM MANAGER - 8
 Case 17-41467-MJH    Doc 342    Filed 04/24/18    Ent. 04/24/18 14:06:00    Pg. 8 of 13

In re Comput. Learning Ctrs., Inc., 285 B.R. 191, 205 (Bankr. E.D. Va. 2002). Such oversight is particularly important in a case such as this where the disparity between the hourly rate charged by the two professionals is so significant, i.e., $125 for the Dairy Consultant as compared to $500 for the Farm Manager.

The Court does not question that Ms. Crocker performed the liquidation services identified or that such services were beneficial to the estate. The problem is that liquidation was not within the scope of services for which Ms. Crocker's employment by the Trustee was approved. It is further undisputed that the Trustee did not file an application to expand the Farm Manager's duties. If Mr. Groen's participation in liquidation services was minimal by mid-December due to some valid reason, it would have been prudent to seek approval of an expanded employment agreement when the Trustee filed the motion to increase the Farm Manager's fee cap from $75,000 to $140,000 on December 20, 2017. See ECF No. 226.

In sum, while it is clear that in a case of this nature, the Trustee has and will continue to require extensive assistance in performing her duties, the Trustee has a duty to step in and do the work herself where feasible and to supervise and direct the professionals she employs to minimize administrative expenses. Even though the Court's decision to reduce certain fees is based primarily on the scope of the employment order for the Farm Manager, it also is based on the fact that the delegation of duties related to liquidation, primarily in attending the auctions and dealing with liquidation issues, went too far. This is particularly true in a case such as this, where there were other less expensive, knowledgeable, and competent professionals available to do the required tasks at significantly lower rates (i.e., the Trustee, Mr. Groen, and Mr. Pike). The Court, therefore, disallows certain fees for services directly related to liquidation of estate assets.[4]

---

[4] Note that the Court did not disallow all fees related to liquidation. Fees were allowed for investigation of assets and supervision of other professionals in relation to the liquidation of assets, to the extent it appeared to implicate

MEMORANDUM DECISION ON APPLICATION FOR
COMPENSATION OF FARM MANAGER - 9

The Court has reviewed the time records in detail, including the supplementary materials filed, to determine the amount of fees that are not reasonable under the circumstances of this case. The time records contain multiple entries billed at the rate of $500 per hour for performing services related to the liquidation of estate assets. Discerning the amount of time attributable to each service was difficult because the time records contain numerous instances of block billing.

Guidelines have been published by the U.S. Trustee's Office that delineate prohibitions on lumping together in one billing event multiple entries that are unrelated ("block billing"). Such block billing impedes a court's ability to determine the reasonableness of the hours spent on individual tasks and by itself has served as the basis for courts to disallow fees or to issue a flat reduction of a specific percentage from an award of attorney's fees. See, e.g, In re Charis Hosp., LLC., 360 B.R. 190, 200 (Bankr. M.D. La. 2007) (disallowing half of the sum for services that were lumped together); In re Malden Mills Indus., Inc., 281 B.R. 493, 498 (Bankr. D. Mass. 2002).

Block billing is a "time-keeping method by which an attorney lumps together the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." Harris v. Allstate Ins. Co., No. 07-8789, 2009 WL 86673, at *3 (E.D. La. Jan. 12, 2009). The burden is on the fee applicant to organize billing records in a manner that enables the reviewing court to easily identify the hours reasonably expended. "Fee applicants who fail to meet this burden do so at their own peril," and "[w]here billing records are lacking in detail, a reviewing court may reduce the fee to a reasonable amount." See Brandt v. Astrue, No. 08-0658, 2009 WL 1727472, at *3 (D. Or. June 16, 2009).

---

management of the farm or assisting Mr. Pike and Mr. Groen in the investigation or location of missing assets. These are tasks the Trustee would have had difficulty performing because she was not on site.

Examples of block billing appear in the time records for services performed on November 16, 20, 27, December 15, 20, 2017, January 4, 10, 19, 23, 29, and February 5, 22, 2018.  The Court raised the issue of block billings at the April 5, 2018 hearing, but no further delineation of the block billings was provided in the supplemental filings by the Farm Manager.  The Court, therefore, used its best judgment to determine a reasonable amount for the disallowed itemized services.  Based on the Court's review of the time records, the Court determines that a total of 28.4 hours spent by Ms. Crocker on liquidation services is disallowed.  At a rate of $500 per hour, this equates to $14,200 in fees.

The Court also has concerns whether Ms. Crocker exercised reasonable billing judgment for certain additional tasks.  For instance, on November 12, 2017, Ms. Crocker spent 2.0 hours to "[d]raft engagement letter and revise employment documents" and .5 hours to "review Rule 2016 and related employment rules."  At a billing rate of $500 per hour, Ms. Crocker is seeking compensation of $1,250 from estate funds for these services.  The Court finds that it is not reasonable for an attorney/receiver of Ms. Crocker's level of experience to charge this amount for fairly routine tasks, particularly reviewing rules that are standard knowledge for bankruptcy attorneys and other bankruptcy professionals. The Court disallows 1.5 hours for such services and reduces Ms. Crocker's application by $750.

The Court also concludes that it was not reasonable for Ms. Crocker to charge 1.0 hours on the same date to review the employment documents for Mr. Groen, or .7 hours on November 22, 2017, to assist Mr. Groen in finalizing his employment application.  Mr. Groen is a professional hired by the Trustee, not Ms.Crocker.  The Court will therefore reduce Ms. Crocker's application by an additional 1.7 hours or $850.

Following is a table of the deductions that will be taken from the Application as calculated by the Court:

| DATE | DESCRIPTION (Summary) | QUANTITY | BLOCK BILLING | AMOUNT | REASON |
|---|---|---|---|---|---|
| 11/12/2017 | Draft engagement letter and revise employment documents; review Rule 2016 and related rules; review S. Groen documents and fee schedule | 2.5 | No | $1,250 | Amount of fees not reasonable /scope of employment |
| 11/22/2017 | Assist Steve Groen in finalizing employment application | .7 | No | $350 | Scope of employment |
| 1/5/2018 | Travel to Toppenish | 3.0 (50% of time) | No | $1,500 | Scope |
| 1/5/2018 | Attend auction | 3.5 | No | $1,750 | Scope |
| 1/19/2018 | Preparation for liquidation and auction | 3.0 | Yes | $1,500 | Scope |
| 1/23/2018 | Telephone calls and conferences regarding auction issues | 1.0 | No | $500 | Scope |
| 1/24/2018 | Calls re auction | 2.0 | No | $1,000 | Scope |
| 1/29/2018 | Meet with Scott and Chad re cow auction; work on auction prep | 3.0 | Yes | $1,500 | Scope |
| 2/2/2018 | Travel to auction | 3.0 (50% of time) | No | $1,500 | Scope |
| 2/2/2018 | Attend auction | 3.0 | No | $1,500 | Scope |
| 2/8/2018 | Prepare cow sales report; calls re cow sales | 3.0 | No | $1,500 | Scope and amount of fees unreasonable |
| 2/9/2018 | Emails with Trustee and assistant re final cow sales report | .2 | Yes | $100 | Scope |
| 2/14/2018 | Telephone conference | .2 | Yes | $100 | Scope |

| | | | | | |
|---|---|---|---|---|---|
| | regarding auction set up; emails re auction | | | | |
| 2/22/2018 | Travel to auction | 2.5 | No | $1,250 | Scope |
| 2/22/2018 | Attend auction | 1.0 | Yes | $500 | Scope |

TOTAL Reduction: $15,800.00

Accordingly, for the reasons set forth herein, the Court concludes that the Application for Compensation of Farm Manager is granted in part. The requested compensation of the Farm Manager is approved in the amount of $110,700.00 for fees and $2,106.37 for expenses, for total compensation of $112,806.37.

/ / / End of Memorandum Decision / / /

MEMORANDUM DECISION ON APPLICATION FOR
COMPENSATION OF FARM MANAGER - 13